**UNITED STATED DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **MICHELLE MCCARTHY,** *individually and on behalf of a class of similarly situated persons,* | |
| *Plaintiff,* | |
| v. | Case No.: 8:24-cv-2916 |
| **DATAX, LTD, FINSANA, LLC, MICHAEL D'AMBROSE, NCR FINANCIAL SERVICES, INC., STRATEGIC SOLUTIONS SERVICES** *doing business as* **ARROW MOUNTAIN FUNDING,** *and* **THE FIRST NATIONS LENDERS' AUTHORITY,** | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

### CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, **Michelle McCarthy** ("**Ms. McCarthy**"), on behalf of herself and all similarly situated individuals, by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **DataX, Ltd.** ("**DataX**"), **Finsana, LLC** ("**Finsana**"), **Michael D'Ambrose** ("**D'Ambrose**"), **NCR Financial Services, Inc.** ("**NCR**"), **Strategic Solution Services,** d/b/a **Arrow Mountain Funding** ("**Strategic Solution Services**" or "**Arrow Mountain Funding**"), and **The First Nations Lenders' Authority** ("**FNLA**"), (collectively, the "**Defendants**"), stating as follows:

## DESCRIPTION OF THE CASE

1.     This is an action against all Defendants for violations of the *Racketeer Influenced and Corrupt Organizations Act*, 18 U.S.C. § 1961, *et seq.* ("RICO"), Florida's *Civil Remedies for Criminal Practices Act*, § 772.102, Fla. Stat., *et seq.* ("CRCPA"), and for unjust enrichment, and against Strategic Solution Services and D'Ambrose for violations of the *Florida Consumer Collection Practices Act*, § 559.55, Fla. Stat., *et seq.* ("FCCPA").

2.     The Defendants operate, or provide various services essential to the operation of, the online lending website https://www.arrowmountainfunding.com/ ("Arrow Mountain"). Arrow Mountain makes online loans to consumers throughout the United States, utilizing a "Rent-A-Tribe" model in an attempt to avoid state usury laws.

3.     Loans made through Arrow Mountain charge interest exceeding **<u>600%</u>** annually – rates significantly above the maximum legal rate in most states, including Florida. Indeed, Florida law prohibits usury and caps interest rates at 18% annually. Interest rates of 45% and higher are deemed a felony. *See* Section 687.071(3), Florida Statutes.  Loans made at usurious rates are void *ab initio* under Florida law.

4.     Arrow Mountain claims to be "a subsidiary agency of The First Nations Lenders' Authority," "an independent body with the mandate to oversee short-term

lending service businesses within and from the Mohawk Territory of Kahnawake (also written as "Kahnawá:ke").[1]

5.      By asserting First Nation governance, and through the use of choice-of-law provisions and assertions American borrowers must file legal action in Quebec, Defendants have attempted to strip consumers of any remedies they may have under state law, and also attempted to circumvent state usury laws, such as Florida's. However, the notion that Arrow Mountain is operated primarily by, and/or for the benefit of the Mohawk Territory of Kahnawake is a farce, as the lending scheme operates primarily for the financial benefit of non-First Nation-owned NCR and related entities.

6.      To evaluate potential borrowers, the Defendants obtain consumer reports from DataX, a consumer reporting agency which tailors its reports to the subprime lending industry.

7.      To collect Arrow Mountain's illegal loans, Strategic Solution Services often hires an Illinois-based debt collector, Defendant Michael D'Ambrose, to send wage assignment letters directly to the borrower's employer. Such notices are carefully designed to look like real wage garnishment writs issued by a court of law and claim the borrower's employer is required to garnish the consumer's wages and remit payment directly to Strategic Solution Services. However, Florida law requires that a

---

[1] Although Canada refers to indigenous groups as "First Nations" rather than "Tribes," the phrase "rent-a-tribe" has been prevalently used in litigation for over a decade and can encompass First Nations or any other group of indigenous groups which assert to be sovereign nations located inside the border of another country.

debt be reduced to judgment and also requires approval of a court prior to the garnishment of a consumer's wages. Strategic Solution Services' wage assignment letters are sent without suit ever having been filed, and thus violate the law.

## JURISDICTION AND VENUE

8. Subject matter jurisdiction for Plaintiff's federal claims arises under RICO, 18 U.S.C. § 1965, and 28 U.S.C. § 1331.

9. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10. This Court may also exercise diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d)(2) as the matter in controversy exceeds $5,000,000 and a member of a class of the plaintiffs is a citizen of a different state from any Defendant.

11. Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b), because the events giving rise to this cause of action occurred within the Middle District Florida, including in this Division.

## PARTIES

### Ms. McCarthy

12. Ms. McCarthy is a natural person who at all times relevant has resided in Tampa, Hillsborough County, Florida, where she maintains her permanent residence.

13. Ms. McCarthy is a *Consumer* as defined by the FCCPA, § 559.55(8), Fla. Stat.

## DataX

14.    DataX is Delaware limited liability company with a principal business address of 7582 Las Vegas Blvd. South, Suite 693, Las Vegas, NV 89123.

15.    DataX can be served at its Nevada registered agent, Corporation Service Company, 112 North Curry Street, Carson City, NV, 89703.

## Finsana

16.    Finsana is a Delaware limited liability company with a principal business address of 4480 Chem. de la Côte-de-Liesse, Suite 355 Mount Royal, Quebec, Canada H4N 2R1.

17.    Finsana's Delaware Registered Agent is Corpomax, Inc., 2915 Ogletown Rd., Newark, DE 19713.

## D'Ambrose

18.    D'Ambrose is a natural person believed to reside at 1931 W. Wolfram St., Chicago, IL 60657.

## FNLA

19.    FNLA states it operates from 1 Patton Road, P.O. Box 2012, Mohawk Territory of Kahnawake (Quebec), J0L 1B0, Canada.

20.    FNLA claims it is chartered by the Mohawk Territory of Kahnawake, who maintains an office at 7 Church Rd., Kahnawake, Quebec J0L 1B0, Canada.

## NCR

21.    NCR is registered in Quebec, Canada as a corporation under Quebec's Business Corporations Act (RLRQ, C. S-31.1).

22.    NCR's address is 4480 ch. de la Côte-de-Liesse, Mont-Royal, Quebec, H4N2R1, Canada.

23.    NCR's majority shareholder is Constantinos Radiotis, who is listed as the President, Secretary, and Treasurer of NCR in filings with the Quebecois government.

## Strategic Solution Services

24.    Strategic Solution Services claims to operate from P.O. Box 2503 Kahnawake, Quebec J0L 1B0, but provides no physical address to the public. From time to time, it also uses the name "Strategic Solutions Services, Inc."

25.    Records from the Delaware Secretary of State show it is registered as a Delaware limited liability company, with a Delaware registered agent of Agents and Corporations, Inc., 1201 Orange St. Ste 600, Wilmington, DE 19801.

## FACTUAL ALLEGATIONS

### Arrow Mountain Funding Makes Usurious Loan to Plaintiff

26.    On or about April 25, 2022, Ms. McCarthy obtained a loan from Arrow Mountain in the principal amount of $500 (the "Loan"). **SEE PLAINTIFF'S EXHIBIT A**.

27.    Ms. McCarthy took the loan out from her home in Florida, had the proceeds wired to her checking account which she maintains in Florida, signed all relevant documents in Florida, received loan communications in Florida, and had payment debited from her checking account at a Florida bank.

28.    The IP address for the server hosting ArrowMountainFunding.com is 158.85.95.174, which corresponds to a physical location in the United States and inside a data center operated by SoftLayer Technologies, Inc.

29.    Ms. McCarthy's loan agreement stated: "Lender: Arrow Mountain Funding," while also indicating "'We," "Us," "Our," and "Lender" mean Strategic Solution Services…"

30.    Arrow Mountain charged an interest rate of 720.54% annually on the Loan, requiring Ms. McCarthy to repay a total of $1,860.22 for the $500 loan. *Id.*

31.    Ms. McCarthy made payments to Arrow Mountain Funding.

32.    Despite this, Arrow Mountain later claimed Ms. McCarthy owed $2,864.78 – more than $1,000 more than the total amount of $1,860.22 called for to be repaid in the initial loan agreement.

33.    § 687.02(1), Fla. Stat., renders any extension of credit made at annual interest rates greater than 18% per year usurious.

34.    § 687.071(3), Fla. Stat., renders the making of a loan charging interest above 45% per year a third-degree felony.

35.    § 687.071(7), Fla. Stat., renders any criminally usurious loan void and unenforceable.

36.    Any person who willfully makes a criminally usurious loan, in addition to subjecting themselves to criminal sanctions, forfeits the right to collect payment for the loan. *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935).

37.    Florida has taken usury one step further in the consumer loan context through the passing of the Consumer Finance Act, § 516, Fla. Stat. (the "Act").

38.    The Act requires licensure and state oversight for lenders issuing loans to Florida consumers in the amount of $25,000 or less. § 516.02(1), Fla. Stat.

39.    The Act further restricts the interest and fees which may be charged by a licensed consumer finance company.

40.    § 516.02(c), Fla. Stat., indicates that any loan which fails to comply with the Act is unenforceable in Florida *even if valid wherever made.*

41.    Thus, Florida has made clear that in order to enforce a consumer loan against a Florida resident, a lender must be licensed in Florida and comply with the Consumer Finance Act.

42.    None of the Defendants are licensed as a Consumer Finance Company in Florida.

43.    The Loan charged annual interest exceeding 700%, and is thus unenforceable against Ms. McCarthy, regardless of whether it is valid under the law of a Canadian First Nation, or wherever else it may have been made.[2]

---

[2] The Loan Agreement contains a choice-of-law provision indicating the laws of the Kahnawake govern; however, Cananda criminalizes usury if a loan assesses interest rates greater than 60% annually, with no exception for loans made by persons claiming affiliation with a First Nation. *See* Section 347 of the Criminal Code of Canada.

44.    Further, because the Loan is subject to interest at more than double Florida's enforceable rate, the Loan constitutes an *Unlawful Debt* as defined by 18 U.S.C. § 1961(6) and § 772.102(2), Fla. Stat.

45.    Ms. McCarthy utilized the proceeds from the Loan for personal and household expenses, and thus, the Loan meets the definition of *Debt* under the FCCPA, § 559.55(6), Fla. Stat.

### The Defendants' Enterprise

46.    Strategic Solution Services d/b/a Arrow Mountain Funding is purportedly operated as a "subsidiary agency" of the FNLA.

47.    Strategic Solution Services d/b/a Arrow Mountain Funding makes loans pursuant to a license granted by the FNLA.

48.    Notably, Strategic Solution Services d/b/a Arrow Mountain Funding does not publicly claim to be *owned* by the Mohawks of Kahnawake, instead asserting only that it operates under the authority of the FNLA, which Arrow Mountain Funding describes on its website as an "independent body," *i.e.*, independent from the Mohawks.

49.    The Charter of the First Nation Lenders' Authority ("Charter") states it shall be governed by a three-person Board, which "shall maintain its initial principal place of business and office within the Mohawk Territory of Kahnawake. The Board may, however, with a majority vote from its members, establish other places of

business in such other locations as the Board may, from time to time, determine to be in the best interests of its members."[3]

50.     Thus, according to the FNLA's own Charter, it is not only authorized to conduct business outside of the Mohawk Territory of Kahnawake, its businesses, direct or via licensee, can be located anywhere in the world, including Illinois.

51.     The Charter mostly purports to regulate "short-term lending service businesses within First Nations Territories," including, ostensibly, maximum interest rates.[4]

52.     The Charter cites the Mohawks of Kahnawake's right of self-determination, right to control economic development *within the Territory*, and the right to promote and preserve peace, order and good governance *within the Territory*. Charter, at § 1.3 (emphasis added).

53.     However, the FNLA does not govern loans solely made *within the Territory.*

54.     The FNLA allows anyone to apply for certification, charging a mere US$20,000 per year for a lender to become a "General Member," US$7,500 per year

---

[3] https://fnla.ca/wp-content/uploads/2023/04/000-C-First_Nations_Lenders_Authority_-_Draft_Charter_v5_2022_04_11.pdf

[4] Notably, while the FNLA, through its Charter, claims to regulate lending in the Kahnawake's territory, numerous online lending websites claim the Kahnawake as the lender or that its laws control the loan contract, without any mention of the FNLA. *See e.g.,* safeloan.com, claiming to be a "Mohawk-controlled proprietorship, carried on by a single Mohawk status card-carrying member;" unclewarbucks.com, claiming to offer "loans pursuant to Mohawk Territory of Kahnawake law."

to become an "Affiliate Member" (*e.g.*, companies which "assist" licensed lenders), and US$5,000 for "approved vendors."[5]

55.     Thus, a lending platform like Arrow Mountain, which likely has at least one General Member, one Affiliate Member, and one or more Approved Vendors, would pay around $32,500 per year in fees to the FNLA.

56.     The "application for certification" does not require the applicant to be a member of a First Nation, or even Canadian.

57.     The "application for certification" does not require the applicant to lend solely within the Mohawk Territory of Kahnawake.

58.     Indeed, the FNLA is clearly geared to serve American business interests. The Mohawk Territory of Kahnawake, like all other parts of Quebec and Canada, uses the Canadian dollar as legal tender; yet, despite purportedly being ran by a *Canadian First Nation* authority, every price quoted in the "application for certification" is in United States dollars.

59.     Notably, the Charter contains no reference or requirements as to how the fees it receives should be spent, or even that the fees it receives should benefit the Mohawks of Kahnawake – or any other First Nation.[6]

60.     The FNLA's only published address – 1 Patton Rd., Kahnawake, Quebec, appears to be a residential address.

---

[5] The application is publicly available here: https://fnla.ca/application_forms/.

[6] The charter does, though, expressly provide for compensation to be paid to the three board members. One board member is a Canadian attorney; two of the three board members are unknown.

61.    Despite a Quebec address, the entire FNLA Charter is only publicly available in English, making clear that its intent is to attract lenders from outside Quebec, where French is the dominant as well as the official language.

62.    Indeed, while Strategic Solution Services d/b/a Arrow Mountain Funding purportedly operates through a license provided by the FNLA, the primary beneficiaries of its loans are non-First Nations persons.

63.    Arrow Mountain Funding is bankrolled and managed, at least in part, through NCR and Finsana.

64.    NCR and Finsana are run by Constantine "Costa" Radiotis ("Radiotis"), a Montreal-based businessman with significant experience in online payday lending.

65.    Radiotis' empire includes dozens of lenders purportedly affiliated with American Indian tribes, several lenders operating with state licenses from Utah or Missouri, and some outside of the United States, including in Panama, as well as a half-dozen or so others which claim affiliation with the First Nations in Quebec.[7]

66.    While these NCR-affiliated lenders have many different affiliations – American Indian, First Nation, Utah and Missouri based, etc. – each and every lender, including Arrow Mountain, is answered by the same automated phone system, using

---

[7] Lending websites ostensibly "tribally" owned but controlled by Radiotis, NCR, Finsana, *et al.*, include: Condor Credit (Big Valley Band of the Pomo Indians); First Day Loan and Rain of Cash (WLCC/Oglala Sioux), and Green Funds Go (Mohawk/First Nations). Radiotis' non-tribal lending platforms include: NCRU Financial Services (Utah lending license); NCRM Financial Services (Missouri lending license); and Prestamos 911 (Panama-based lender).

the same computer-generated voice, and containing the exact same error: "Thank you for calling (lender name). To ensure proper *experience* (SIC) all calls will be recorded for quality and compliance purposes."

67.    Further, every Radiotis-related lender appears to share the exact same ACH Processor.[8]

68.    On or about April 25, 2022, this unknown ACH Processor transferred the proceeds of the Loan through the ACH network into Ms. McCarthy's checking account, which she maintained in Tampa, Florida.

69.    The ACH memo line for the transaction stated: "AMF_WLO 877-286-5954."

70.    877-286-5954 is a phone number operated by NCR and answered, generically, as "customer service."

71.    The nomenclature for ACH credits and debits for *all* "tribally" affiliated lending platforms operated by NCR and Finsana go as such: Initials of the lender, underscore, WLO, 877-286-5954.

72.    Thus, AMF_WLO 877-286-5954 indicates an ACH transaction for a loan from Arrow Mountain, as AMF indicates "Arrow Mountain Funding."[9]

---

[8] "ACH" is Automated Clearing House, an electronic payment network allowing quick and cost-effective payment processing from checking and savings accounts.
[9] Other examples of NCR-affiliated lenders include "CDC_WLO 877-286-5954," which indicates a loan from Condor Credit, and FDL_WLO 877-286-5954, which indicates Fast Day Loans.

73.    The metadata supplied by each "tribal" website for search engines like Google is the same — (lender name) + "Short Term Loans Provider."

74.    For example, a Google search for "Arrow Mountain" results in the following:

Arrow Mountain Funding
https://www.arrowmountainfunding.com    ⋮
Arrow Mountain Funding | Short Term Consumer Loan Provider.

75.    Likewise, a Google search for "Condor Credit" results in the following:

Condor Credit
https://www.condorcredit.com    ⋮
Condor Credit | Short Term Consumer Loan Provider.

76.    The hours of operation for every Radiotis-related lending enterprise are standardized and are listed as Monday-Friday from 8:00 AM to 11:00 PM EST, Saturday and Sunday from 8:00 AM to 9:00 PM EST – even for tribal lenders in PST or MST time zones.

77.    The three-dozen lending websites, despite supposedly being operated by geographically-diverse persons, Tribes, and First Nations, are all essentially copy-and-paste jobs of one another.

78.    While minor details are changed, the font and text color, as well as the utilization of different stock photos, and the text of the websites are almost verbatim duplicates of one another.

79.    For example, FastDayLoans.com – purportedly operated by the Wakpamni Lake Community Corporation and Oglala Sioux in South Dakota –

contains the phrase, "Get up to $1000 direct to your bank account in as little as 24 hours," appearing in the upper-right corner of the webpage, as such:



*See* https://www.fastdayloans.com, accessed December 13, 2024.

80.    Likewise, CondorCredit.com, purportedly owned and operated by the Big Valley Band of Pomo Indians in California, contains the same phrase, in the same location, with the same line spacing, as the phrase appears as follows:



*See* https://www.condorcredit.com, accessed December 13, 2024.

81.    Arrow Mountain's website contains a nearly-identical phrase, in the same location on the upper-right corner of the website. Instead of "$1000 direct," Arrow Mountain advertises "$500 direct," appearing as follows:



*See* https://www.arrowmountainfunding.com, accessed December 13, 2024.

82.    Each of the Radiotis-related lending websites, including Arrow Mountain, contains the phrase "How much do you want to borrow?" followed by a slider that lets the user select an amount, with the slider set to $500 by default.

83.    The website for every Radiotis-related lending entity contains a series of four testimonials, with a circular picture of the consumer supposedly giving the testimonial.

84.    Many of the Radiotis-related lending entities recycle consumer testimonials. For example, "Kimberly W." in Baltimore, MD provided a testimonial to Cash Lending Group, a non-tribal lender; the identical picture is utilized for a testimonial concerning Fast Day Loans, ostensibly by a "Tricia W."

85.    The conformity between nearly three-dozen lending websites, including shared call centers, ACH processor and websites, make clear that Radiotis, NCR and Finsana – and not a First Nation or a sovereign tribe – operate each lending website.

### Strategic Solution Services' Illegal Use of Wage Assignment

86.    At some point in or around December 19, 2022, Strategic Solution Services mailed a ***Wage Assignment Demand Notice*** to Ms. McCarthy's employer, Age Rejuvenation, in South Tampa. **SEE PLAINTIFF'S EXHIBIT C.**

87.    The Wage Assignment Demand Notice was a communication which stated the balance of the Loan – $2,864.78 – and sought payment.

88.    The Wage Assignment Demand Notice was thus in connection with the collection of the Loan.

89.    The Wage Assignment Demand Notice falsely represented that Ms. McCarthy owed $2,864.78 to Strategic Solution Services, when such a balance was unenforceable against Ms. McCarthy.

90.    In sending the letter, Strategic Solution Services falsely represented that it had the legal right to garnish, or assign a portion of Ms. McCarthy's wages.

91.    Voluntary wage assignments on a consumer loan are not legal in Florida. Fla. Stat. § 516.17 (2024).

92.    Upon receipt of the letter, Age Rejuvenation advised Ms. McCarthy that her wages were being garnished.

93.    Ms. McCarthy became extremely upset and emotionally distraught when told that her income – already stretched thin – would likely be reduced further.

94.    Further, Strategic Solution Services disclosed derogatory, legally-protected information about Ms. McCarthy's purported debt regarding her Loan, to her employer, without Ms. McCarthy's authorization or consent.

### D'Ambrose's Involvement

95.    Strategic Solution Services' Wage Assignment Demand Notice demanded that Age Rejuvination withhold 15% of Ms. McCarthy's pay and send it to: Strategic Solution Services, **PO Box 959, Wood Dale, IL 60191**.

96.     The address utilized – PO Box 959, Wood Dale, IL 60191 – is an address used by D'Ambrose for a myriad of other lending platforms he has operated, including Wire Into Cash, which was operated through MD Financial, LLC.[10]

97.     This address was also used by Field Assets Service Team LLC d/b/a Guaranteed Cash Now and DTS Capital d/b/a Money Credit Line 1, two other unlicensed, predatory online payday lenders operated by D'Ambrose, or to which D'Ambrose otherwise provided services.

98.     The Wage Assignment Demand Notice contained an affidavit signed by Cathy Lake ("Lake"), notarized by David Mendoza ("Mendoza") – a notary public licensed by the State of Illinois, and not on the Kahnawake Reserve.

99.     D'Ambrose utilized bogus "wage garnishment" documents to collect debts purportedly owed to his predatory lending platforms, including MR Capital.

100.    Indeed, a "wage garnishment" notice issued January 4, 2016 contains virtually the same "affidavit" as the one sent in December 2022 to Ms. McCarthy's employer, and was even notarized by the same Illinois Notary Public – David Mendoza. **SEE PLAINTIFF'S EXHIBIT C.**

101.    As such, it is clear that D'Ambrose, likely through a business entity not disclosed to Ms. McCarthy, was hired by Strategic Solution Services for the purpose of collecting the Loan through use of a Wage Assignment Demand Notice.

---

[10] On information and belief, the "MD" in MD Financial is Michael D'Amrose's initials.

### DataX Knowingly Facilitates Loansharking

102.    DataX is a specialty CRAs which primarily services the needs of online payday lenders like Arrow Mountain – *e.g.*, lenders making short-term, small-dollar loans at triple-digit interest rates.

103.    DataX maintains terabytes of proprietary data specifically tailored to assist online, subprime lenders in evaluating potential borrowers, including consumers' checking account histories, employment and salary data, and past payday loan experiences.

104.    Indeed, on April 25, 2022, DataX sold Ms. McCarthy's consumer report to Arrow Mountain.

105.    DataX's records indicate Arrow Mountain is in Illinois, not Quebec, and lists Illinois as the state the inquiry originated from.

106.    DataX knew that, when furnishing a consumer credit report to Arrow Mountain, the data it was providing was in connection with the making of a loan at a triple-digit interest rate, as DataX, a subsidiary of Equifax Information Services, one of the largest consumer CRAs in the world, conducts extensive "due diligence" of its subscribers before credentialing them to obtain credit reports.

107.    DataX's assistance in the enterprise is of critical importance.

108.    Absent the trove of data DataX knowingly supplied for use by Arrow Mountain, no such loan could have, or would have, been made to Ms. McCarthy.

109.    DataX has extensive policies in place to conduct due diligence on potential new customers, which includes, in most cases, sending an investigator to the primary business office of the lender and/or obtaining a sample loan agreement.

110.    In situations where a lender is "tribally" owned but has a non-tribal "services provider" through which they request data from DataX, DataX typically sends its investigators to the offices of the service provider.

111.    Prior to furnishing data to Arrow Mountain, DataX conducted an investigation in accordance with the FCRA.

112.    Beyond this, DataX accepts tradeline data from Arrow Mountain, which data includes loan amounts, payments due, and payment history.

113.    DataX has had numerous lawsuits filed against it concerning the provisioning of credit reports to online payday lenders with sham tribal affiliation, like Arrow Mountain.

114.    DataX thus knew, or should have known that Arrow Mountain charged interest exceeding 700% APR.

## FIRST CAUSE OF ACTION
### Violation of RICO, 18 U.S.C. § 1962(c)

### CLASS CLAIM AGAINST ALL DEFENDANTS

115.    Plaintiff adopts and incorporate paragraphs 1 – 114 as if fully restated herein.

116.    Pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (b)(4), Plaintiff brings

this action for herself and on behalf of the following class of which she is a member,

initially defined as:

**All consumers: (1) located in any state other than Delaware, Missouri, Utah, or Nevada;[11] (2) who obtained a loan from Arrow Mountain Funding, and (3) who made at least one payment towards the loan within the last four years (the "National Class").**

---

[11] While Plaintiff is located in Florida, at least 20 other states have similar laws that render the loans void as detailed with respect to Florida. *See* Ala. Code § 5-18-4 (loans made without a license "shall be void"); Ariz. Rev. Stat. § 6-613(B) ("Any consumer lender loan that is made by a person who is required to be licensed pursuant to this chapter but who is not licensed is void, and the person making that consumer loan has no right to collect, receive or retain any principal, finance charges or other fees in connection with that consumer lender loan."); Ark. Const. amend. LXXXIX, § 6 (loans that charge excessive interest rates are "void"); Cal. Fin. Code § 22750 (loans made without license are "void," including the "right to collect or receive any principal, charges, or recompense in connection with the transaction"); Conn. Gen. Stat. § 36a-558 (c)(1) (loans made without a license are "void" and uncollectable); Ga. Code Ann. § 7-3-29(a) (loans made without a license "shall be null and void"); Idaho Code § 28-46-402 (payday loans made without a license are "void, uncollectable and unenforceable"); 815 Ill. Comp. Stat. 122/4-10 (payday loans made without a license "shall be null and void"); Kan. Stat. § 16a-5-201 (loans that charge excessive interest and made without a license are "void"); Md. Code, Com. Law § 12-314  (any person without a license "may not receive or retain any principal, interest, or other compensation with respect to any loan that is unenforceable under this subsection"); Minn. Stat. §§ 47.60, 47.601 (provisions in loan contracts charging excessive interest rates are void and unenforceable); N.Y. Gen. Oblig. Law § 5-511 (usurious loans are "void"); Or. Rev. Stat. § 725.045 (consumer finance loans made without a license are "void"); Or. Rev. Stat. § 725.045 (consumer finance loans made without a license are "void"); 6 R.I. Gen. Laws § 6-26-4 (loans charging excessive interest "shall be usurious and void"); S.D. Codified Laws § 54-4-44 (loans charging excessive interest or made without a license are "void and uncollectible"); Tex. Fin. Code Ann. § 305.002 (allowing for recovery of the "principal amount on which interest is charged and received"); Va. Code § 6.2-1541(A) (declaring such loans "void" and principal uncollectible); W. Va. Code § 46A-5-101 (loans made in violation of Consumer Credit and Protection Act are "void and the consumer is not obligated to pay either the principal or the loan finance charge"); Wis. Stat. § 425.305 (declaring usurious transactions "void"). Likewise, numerous states render the interest uncollectable. *See, e.g.,* Wash. Rev. Code § 19.52.030 ("If in any action on such contract proof be made that greater rate of interest has been directly or indirectly contracted for or taken or reserved, the creditor shall only be entitled to the principal.")

117.    Excluded from the National Class are the Defendants and any of their officers, directors, and employees.

118.    Plaintiff reserves the right to modify or amend the National Class definition before the Court determines whether certification is appropriate.

119.    **Numerosity. Fed. R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all of them is impractical. Arrow Mountain is heavily marketed online and accessible to consumers throughout each state in the National Class. Although the precise number of Class members is unknown, based on the class sizes in similar cases, Plaintiff anticipates that there are likely thousands of members, the names and addresses of whom are identifiable through documents and business records maintained by the Defendants.  Thus, the class is so numerous that joinder of all members is impracticable.

120.    **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** There are questions of law and fact that are common to the National Class which predominate over questions affecting any individual class member. Specifically, these common questions include, without limitation: (a) whether the Defendants and associated persons constitute an *Enterprise* as defined by 18 U.S.C. § 1961(4); (b) whether the activities of the Defendants or the enterprise affected interstate commerce; (c) whether loans made to members of the class by Arrow Mountain amount to unlawful debts as defined by 18 U.S.C. § 1961(6); (d) whether the Defendants participated in the enterprise through the collection of

unlawful debt; and, (e) whether Plaintiff and the class members were harmed by the Defendants.

121.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal theories. Arrow Mountain charged each putative class member interest in excess of their respective state's interest rate cap and without any state lending licenses. Plaintiff has no interest adverse or antagonistic to the interests of other members of the Class and has the same claims for statutory damages that she seeks for members of the Class.

122.    **Adequacy of Class Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the National Class and will fairly and properly protect the interests of the Class. Plaintiff has retained experienced counsel who have litigated well over two thousand consumer cases under consumer protection statutes, including RICO. Plaintiff's counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

123.    **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The Defendants' conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of RICO. The

damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by the Defendants' conduct.

124. **Injunctive Relief Appropriate for the Defendants, Class. Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants have and continue to act on grounds generally applicable to the class, making appropriate injunctive relief with respect to Ms. McCarthy and the class members. Ms. McCarthy and the putative class seek an injunction prohibiting the Defendants from continued collection of these illegal loans and ordering the dissolution of each corporate Defendant that has engaged in any enterprise pled herein.

125. As alleged above, Finsana, NCR, Strategic Solution Services, and the FNLA, together with related entities and the Mohawks of Kahnawake have established one or more association-in-fact enterprises to evade state usury laws.

126. The loans issued through Arrow Mountain to Ms. McCarthy and the Class carried an interest rate more than double that of applicable state law and, thus, the loans are unenforceable and constitute *Unlawful Debts* under RICO, 18 U.S.C. § 1961(6).

127.   The Defendants each associated with the enterprise and participated in the affairs of the enterprise as described in detail herein, which existed for the purpose of collecting unlawful debt.

128.   The Defendants' participation in the enterprise violated § 1962(c) of RICO and caused Ms. McCarthy and the Class to repay amounts on unlawful loans.

129.   Accordingly, the Defendants are jointly and severally liable to Ms. McCarthy and the putative class members for treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

## SECOND CAUSE OF ACTION
### Violation of RICO, 18 U.S.C. § 1962(d)

### CLASS CLAIM AGAINST ALL DEFENDANTS

130.   Plaintiff adopts and incorporate paragraphs 1 – 114 and 116 – 118 as if fully restated herein.

131.   Pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (b)(4), Plaintiff brings this action for herself and on behalf of the National Class, defined above.

132.   **Numerosity. Fed R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all of them is impractical. Arrow Mountain is heavily marketed online and accessible to consumers throughout each state in the National Class. Although the precise number of Class members is unknown, based on the class sizes in similar cases, Plaintiff anticipates that there are likely thousands of members, the names and addresses of whom are identifiable through documents and business

records maintained by the Defendants.  Thus, the class is so numerous that joinder of all members is impracticable.

133.   **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** There are questions of law and fact that are common to the National Class which predominate over questions affecting any individual class member. Specifically, these common questions include, without limitation: (a) whether the Defendants and associated persons constitute an *Enterprise* as defined by 18 U.S.C. § 1961(4); (b) whether Defendants had knowledge of and facilitate the conspiracy to collect unlawful debt from Plaintiff and members of the putative Class; (c) whether loans made to members of the class by Arrow Mountain amount to unlawful debts as defined by 18 U.S.C. § 1961(6); and, (d) whether Plaintiff and the class members were harmed by the Defendants.

134.   **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal theories. Arrow Mountain charged each putative class member interest in excess of their respective state's interest rate cap and without any state lending licenses. Plaintiff has no interest adverse or antagonistic to the interests of other members of the Class and has the same claims for statutory damages that she seeks for members of the Class.

135.   **Adequacy of Class Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the National Class and will fairly and properly protect

the interests of the Class. Plaintiff has retained experienced counsel who have litigated well over two thousand consumer cases under consumer protection statutes, including RICO. Plaintiff's counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

136.    **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The Defendants' conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of RICO. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by the Defendants' conduct.

137.    **Injunctive Relief Appropriate for the Defendants, Class. Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants have and continue to act on grounds generally applicable to the class, making appropriate injunctive relief

with respect to Ms. McCarthy and the class members. Ms. McCarthy and the putative class seek an injunction prohibiting the Defendants from continued collection of these illegal loans and ordering the dissolution of each corporate Defendant that has engaged in any enterprise pled herein.

138.    As alleged above, Finsana, NCR, Strategic Solution Services, and the FNLA, together with related entities and the Mohawks of Kahnawake have established one or more association-in-fact enterprises to evade state usury laws.

139.    The loans issued by Arrow Mountain Funding to Ms. McCarthy and the Class carried an interest rate far in excess of the permissible rate under applicable state law and, thus, the loans are unenforceable and constitute *Unlawful Debts* under RICO, 18 U.S.C. § 1961(6).

140.    The Defendants violated § 1962(d) of RICO by conspiring with each other, and other persons, including the Mohawks of Kahnawake, to issue and collect unlawful debts issued by Arrow Mountain.

141.    The Defendants agreed to participate in the RICO conspiracy and agreed to the overall objective of the conspiracy – to collect unlawful loans.

142.    The Defendants were each aware of the goals of the enterprise and each took actions in furtherance of this conspiracy. For example, at various times:

   a.   Strategic Solution Services d/b/a Arrow Mountain Funding made loans to Ms. McCarthy and the putative Class;

   b.   The FNLA accepted at least $32,500 of payment per year from Strategic Solution Services, NCR, Finsana and others in exchange for a "lending

license" and the apparent authority and governance of the Mohawk of Kahnawake to make such loans;

c. DataX provided detailed consumer credit information to the enterprise, to facilitate the underwriting and collection of the loans;

d. D'Ambrose conceived of, and implemented, a collection scheme involving "wage assignment notices," which he then sent to the employers of delinquent borrowers; and,

e. Finsana and NCR oversaw the day-to-day operations of Arrow Mountain, including the design of the website through which all loans are obtained and the provision of customer service through a call center.

143. Accordingly, the Defendants are jointly and severally liable to Ms. McCarthy and the putative class members for treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

### THIRD CAUSE OF ACTION
**Violation of the CRCPA, § 772.103(3), Fla. Stat.**

### CLASS CLAIM AGAINST ALL DEFENDANTS

144. Plaintiff adopts and incorporate paragraphs 1 – 114 as if fully restated herein.

145. Pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (b)(4), Plaintiff brings this action for herself and on behalf of the following class of which she is a member, initially defined as:

**All consumers: (1) located in Florida, (2) who obtained a loan from Arrow Mountain Funding, and (3) who made at least one payment towards the loan within the last four years (the "Florida Sub-Class").**

146.    Excluded from the Florida Sub-Class are the Defendants and any of their officers, directors, and employees.

147.    Plaintiff reserves the right to modify or amend the Florida Sub-Class definition before the Court determines whether certification is appropriate.

148.    **Numerosity. Fed R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all of them is impractical. Arrow Mountain is heavily marketed online and accessible to consumers throughout Florida. Although the precise number of Class members is unknown, based on the class sizes in similar cases, Plaintiff anticipates that there are likely hundreds of members, the names and addresses of whom are identifiable through documents and business records maintained by the Defendants.  Thus, the class is so numerous that joinder of all members is impracticable.

149.    **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** There are questions of law and fact that are common to the Florida Sub-Class which predominate over questions affecting any individual class member. Specifically, these common questions include, without limitation: (a) whether the Defendants and associated persons constitute an *Enterprise* as defined by § 772.102(3), Fla. Stat.; (b) whether loans made to members of the class by Arrow Mountain amount to unlawful debts as defined by § 772.102(2), Fla. Stat.; (c) whether

the Defendants participated in the enterprise through the collection of unlawful debt; and, (d) whether Plaintiff and the class members were harmed by the Defendants.

150. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal theories. Arrow Mountain charged each putative class member interest in excess of their respective state's interest rate cap and without any state lending licenses. Plaintiff has no interest adverse or antagonistic to the interests of other members of the Class and has the same claims for statutory damages that she seeks for members of the Class.

151. **Adequacy of Class Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Florida Sub-Class and will fairly and properly protect the interests of the Class. Plaintiff has retained experienced counsel who have litigated well over two thousand consumer cases under consumer protection statutes, including RICO. Plaintiff's counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

152. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The Defendants' conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of the CRCPA. The

damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by the Defendants' conduct.

153.    As alleged above, Finsana, NCR, Strategic Solution Services, and the FNLA, together with related entities and the Mohawks of Kahnawake have established one or more association-in-fact enterprises to evade state usury laws.

154.    The loans issued by Arrow Mountain Funding to Ms. McCarthy and the Class carried an interest rate far in excess of the permissible rate under Florida law and, thus, the loans are unenforceable and constitute *Unlawful Debts* under the CRCPA, § 772.102(2), Fla. Stat.

155.    The Defendants each associated with the enterprise and participated in the affairs of the enterprise as described in detail herein, which existed for the purpose of collecting unlawful debt.

156.    The Defendants' participation in the enterprise violated § 772.103(3), Fla. Stat. and caused Ms. McCarthy and the Florida Sub-Class to repay amounts on unlawful loans.

157.    Accordingly, the Defendants are jointly and severally liable to Ms. McCarthy and the putative class members for treble damages, costs, and attorney's fees pursuant to § 772.104, Fla. Stat.

**FOURTH CAUSE OF ACTION**
**Violation of the CRCPA, § 772.103(4), Fla. Stat.**

**CLASS CLAIM AGAINST ALL DEFENDANTS**

158.    Plaintiff adopts and incorporate paragraphs 1 – 114 and 145 – 147 as if fully restated herein.

159.    Pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (b)(4), Plaintiff brings this action for herself and on behalf of the Florida Sub-Class defined above.

160.    **Numerosity. Fed R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all of them is impractical. Arrow Mountain is heavily marketed online and accessible to consumers throughout Florida. Although the precise number of Class members is unknown, based on the class sizes in similar cases, Plaintiff anticipates that there are likely hundreds of members, the names and addresses of whom are identifiable through documents and business records maintained by the Defendants.   Thus, the class is so numerous that joinder of all members is impracticable.

161.    **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** There are questions of law and fact that are common to the Florida Sub-Class which predominate over questions affecting any individual class member. Specifically, these common questions include, without limitation: (a)

whether the Defendants and associated persons constitute an *Enterprise* as defined by § 772.102(3), Fla. Stat.; (b) whether loans made to members of the class by Arrow Mountain amount to unlawful debts as defined by § 772.102(2), Fla. Stat.; (c) whether Defendants had knowledge of and facilitate the conspiracy to collect unlawful debt from Plaintiff and members of the putative Class; and, (d) whether Plaintiff and the class members were harmed by the Defendants.

162. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal theories. Arrow Mountain charged each putative class member interest in excess of their respective state's interest rate cap and without any state lending licenses. Plaintiff has no interest adverse or antagonistic to the interests of other members of the Class and has the same claims for statutory damages that she seeks for members of the Class.

163. **Adequacy of Class Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Florida Sub-Class and will fairly and properly protect the interests of the Class. Plaintiff has retained experienced counsel who have litigated well over two thousand consumer cases under consumer protection statutes, including RICO. Plaintiff's counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

164. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only

individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The Defendants' conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of the CRCPA. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by the Defendants' conduct.

165.    As alleged above, Finsana, NCR, Strategic Solution Services, and the FNLA, together with related entities and the Mohawks of Kahnawake have established one or more association-in-fact enterprises to evade state usury laws.

166.    The loans issued by Arrow Mountain Funding to Ms. McCarthy and the Class carried an interest rate far in excess of the permissible rate under Florida law and, thus, the loans are unenforceable and constitute *Unlawful Debts* under the CRCPA, § 772.102(2), Fla. Stat.

167.    The Defendants violated § 772.103(4), Fla. Stat. by conspiring with each other, and other persons, including the Mohawks of Kahnawake, to issue and collect unlawful debts issued by Arrow Mountain.

168.    The Defendants agreed to participate in the conspiracy and agreed to the overall objective of the conspiracy – to collect unlawful loans.

169.    The Defendants were each aware of the goals of the enterprise and each took actions in furtherance of this conspiracy. For example, at various times:

a.    Strategic Solution Services d/b/a Arrow Mountain Funding made loans to Ms. McCarthy and the putative Class;

b.    The FNLA accepted at least $32,500 of payment per year from Strategic Solution Services, NCR, Finsana and others in exchange for a "lending license" and the apparent authority and governance of the Mohawk of Kahnawake to make such loans;

c.    DataX provided detailed consumer credit information to the enterprise, to facilitate the underwriting and collection of the loans;

d.    D'Ambrose conceived of, and implemented, a collection scheme involving "wage assignment notices," which he then sent to the employers of delinquent borrowers; and,

e.    Finsana and NCR oversaw the day-to-day operations of Arrow Mountain, including the design of the website through which all loans are obtained and the provision of customer service through a call center.

170.    Accordingly, the Defendants are jointly and severally liable to Ms. McCarthy and the putative class members for treble damages, costs, and attorney's fees pursuant to § 772.104, Fla. Stat.

### FIFTH CAUSE OF ACTION
### Violation of the FCCPA, § 559.72(9), FLA. STAT.

**CLASS CLAIM AGAINST NCR, FINSANA, D'AMBROSE AND STRATEGIC SOLUTION SERVICES**

171.   Plaintiff adopts and incorporate paragraphs 1 – 114 and 145 – 147 as if fully restated herein.

172.   Pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (b)(4), Plaintiff brings this action for herself and on behalf of the Florida Sub-Class defined above.

173.   **Numerosity. Fed R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all of them is impractical. Arrow Mountain is heavily marketed online and accessible to consumers throughout Florida. Each loan made to a Florida resident charged interest in excess of Florida's maximum statutory rate. Although the precise number of Class members is unknown, based on the class sizes in similar cases, Plaintiff anticipates that there are likely hundreds of members, the names and addresses of whom are identifiable through documents and business records maintained by the Defendants.  Thus, the class is so numerous that joinder of all members is impracticable.

174.   **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** There are questions of law and fact that are common to the Florida Sub-Class which predominate over questions affecting any individual class member. Specifically, these common questions include, without limitation: (a) whether the Defendants attempted to collect Arrow Mountain loans from Florida

residents;  (b) whether any entity involved in the making of the loans was properly licensed under Chapter 516, Florida Statutes; (c) whether loans made to members of the class by Arrow Mountain are unenforceable under Florida law; (d) whether Defendants had knowledge that Arrow Mountain's loans violated Florida law; and, (e) whether Plaintiff and the class members were harmed by the Defendants.

175.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal theories. Defendants attempted to collect loans from Plaintiff and the putative members of the Florida Sub-Class, when such loans were made by an unlicensed entity and charged interest well in excess of Florida's maximum statutory rate. Plaintiff has no interest adverse or antagonistic to the interests of other members of the Class and has the same claims for statutory damages that she seeks for members of the Class.

176.    **Adequacy of Class Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Florida Sub-Class and will fairly and properly protect the interests of the Class. Plaintiff has retained experienced counsel who have litigated well over two thousand consumer cases under consumer protection statutes, including the FCCPA. Plaintiff's counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

177.    **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only

individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. Defendants' conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of the FCCPA. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by the Defendants' conduct.

178. **Injunctive Relief Appropriate for the Defendants pursuant to § 559.77(2), Fla. Stat., Class. Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants have and continue to act on grounds generally applicable to the class, making appropriate injunctive relief with respect to Ms. McCarthy and the class members. Ms. McCarthy and the putative class seek an injunction prohibiting the Defendants from continued collection of these illegal loans and ordering the dissolution of each corporate Defendant that has participated in such collection.

179. The loans issued through Arrow Mountain to Ms. McCarthy and the Florida Sub-Class were void, as the loans carried an interest rate more than double

that of Florida's maximum statutory rate and were made without the required licensure under Florida's Consumer Finance Act, Chapter 516, Florida Statutes.

180.    Defendants NCR, Finsana, D'Ambrose and Strategic Solution Services violated § 559.72(9), Fla. Stat., when they attempted collection of these loans via emails and ACH transactions from Ms. McCarthy and the Florida Sub-Class, thereby asserting the loans were legitimate, and that a legal right to collect the loans existed, when no such right exists, as the loans are unenforceable and illegitimate.

181.    The Defendants have been involved in *dozens* of similar online lending schemes and are well aware that Arrow Mountain's loans violate Florida law.

182.    The Defendants' knowledge is evident through their attempt to avoid Florida law through a guise of tribal affiliation and licensure.

183.    Accordingly, Defendants NCR, Finsana, D'Ambrose and Strategic Solution Services are jointly and severally liable to Ms. McCarthy and each putative Class member for their actual damages in the form of all amounts paid towards the void loans, statutory damages of up to $1,000.00 per Class member, costs, and attorney's fees pursuant to § 559.77(2), Fla. Stat.

184.    Plaintiff further seeks an injunction prohibiting the Defendants from continued collection of these illegal loans and ordering the dissolution of each corporate Defendant that has participated in such collection.

## SIXTH CAUSE OF ACTION
### Violation of the FCCPA, § 559.72(4), FLA. STAT.

### CLASS CLAIM AGAINST D'AMBROSE AND
### STRATEGIC SOLUTION SERVICES

185.    Plaintiff adopts and incorporate paragraphs 1 – 114 as if fully restated herein.

186.    Pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (b)(4), Plaintiff brings this action for herself and on behalf of the following class of which she is a member, initially defined as:

> **All consumers: (1) located in Florida; (2) whose employer, within two years of the date of the filing of this Complaint, received a "Wage Assignment Demand Notice" or similar notification, from D'Ambrose or Strategic Solution Services, regarding a loan issued by Arrow Mountain (the "Wage Assignment Sub-Class").**

187.    Excluded from the Wage Assignment Sub-Class are the Defendants and any of their officers, directors, and employees.

188.    Plaintiff reserves the right to modify or amend the Wage Assignment Sub-Class definition before the Court determines whether certification is appropriate.

189.    **Numerosity. Fed R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all of them is impractical. Arrow Mountain is heavily marketed online and accessible to consumers throughout Florida. Strategic Solution Services routinely refers delinquent borrowers to D'Ambrose, or entities operated by D'Ambrose, who collect such loans through use of a Wage Assignment Demand Notice.  Although the precise number of Class members is unknown, based on the

class sizes in similar cases, Plaintiff anticipates that there are likely hundreds of members, the names and addresses of whom are identifiable through documents and business records maintained by the Defendants.  Thus, the class is so numerous that joinder of all members is impracticable.

190.    **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** There are questions of law and fact that are common to the Florida Sub-Class which predominate over questions affecting any individual class member. Specifically, these common questions include, without limitation: (a) whether D'Ambrose and Strategic Solution Services sent a Wage Assignment Demand Notice directly to the Class Members' employers, without first obtaining judgment; (b) whether the Wage Assignment Demand Notices were in connection with collection of the loans; and (c) whether Plaintiff and the class members were harmed by D'Ambrose and Strategic Solution Services' conduct.

191.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal theories. D'Ambrose and Strategic Solution Services sent a Wage Assignment Demand Notice directly to the employer of each putative Class member. Plaintiff has no interest adverse or antagonistic to the interests of other members of the Class and has the same claims for statutory damages that she seeks for members of the Class.

192. **Adequacy of Class Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Florida Sub-Class and will fairly and properly protect the interests of the Class. Plaintiff has retained experienced counsel who have litigated well over two thousand consumer cases under consumer protection statutes, including the FCCPA. Plaintiff's counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

193. **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. D'Ambrose and Strategic Solution Services' conduct described in this Complaint stems from common and uniform practices, resulting in systematic violations of the FCCPA. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by D'Ambrose and Strategic Solution Services' conduct.

194. **Injunctive Relief Appropriate for the Defendants pursuant to §
559.77(2), Fla. Stat., Class. Fed. R. Civ. P. 23(b)(2).** Class certification is
appropriate because Strategic Solution Services and D'Ambrose have and continue to
act on grounds generally applicable to the class, making appropriate injunctive relief
with respect to Ms. McCarthy and the class members. Ms. McCarthy and the putative
class seek an injunction prohibiting the Defendants from continued use of Wage
Assignment Demands and ordering the dissolution of each corporate Defendant that
utilized such collection methods.

195. Strategic Solution Services and D'Ambrose violated § 559.72(4), Fla.
Stat., when D'Ambrose, acting on behalf of Strategic Solution Services, sent "Wage
Assignment Demands" to Ms. McCarthy's employer, without first obtaining a final
judgment against Ms. McCarthy or obtaining Ms. McCarthy's consent after the debt
had been placed for collection.

196. D'Ambrose has utilized "Wage Assignment Demands" as a collection
tactic since at least 2015 and has been sued in the past for doing so.

197. Accordingly, Strategic Solution Services and D'Ambrose are liable to
Ms. McCarthy and each putative Class member for all money wrongfully garnished
from each Class member, plus statutory damages of up to $1,000.00 per Class member,
costs, and attorney's fees pursuant to § 559.77(2), Fla. Stat.

198. Plaintiff further seeks an injunction prohibiting Strategic Solution
Services and D'Ambrose from utilizing Wage Assignment Demands to collect from

Florida residents, without first obtaining a judgment, and ordering the dissolution of each corporate Defendant that utilized such collection methods.

<u>SEVENTH CAUSE OF ACTION</u>
**Unjust Enrichment**

**CLASS CLAIM AGAINST ALL DEFENDANTS**

199.    Plaintiff adopts and incorporate paragraphs 1 – 114 and 116 – 118 as if fully restated herein.

200.    Pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (b)(4), Plaintiff brings this action for herself and the National Class, defined above.

201.    **Numerosity. Fed R. Civ. P. 23(a)(1).** The Class members are so numerous that joinder of all of them is impractical. Arrow Mountain is heavily marketed online and accessible to consumers throughout each state in the National Class. Although the precise number of Class members is unknown, based on the class sizes in similar cases, Plaintiff anticipates that there are likely thousands of members, the names and addresses of whom are identifiable through documents and business records maintained by the Defendants.  Thus, the class is so numerous that joinder of all members is impracticable.

202.    **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** There are questions of law and fact that are common to the National Class which predominate over questions affecting any individual class member. Specifically, these common questions include: (a) whether Defendants were

unjustly enriched by Plaintiff and the putative members of the National Class by their receipt of funds generated from Arrow Mountain.

203.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each Class member, which all arise from similar operative facts and are based upon the same legal theories. Arrow Mountain charged each putative class member interest in excess of their respective state's interest rate cap and without any state lending licenses. Plaintiff has no interest adverse or antagonistic to the interests of other members of the Class and has the same claims for damages that she seeks for members of the Class.

204.    **Adequacy of Class Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the National Class and will fairly and properly protect the interests of the Class. Plaintiff has retained experienced counsel who have litigated well over two thousand consumer cases, including cases related to state usury laws. Plaintiff's counsel are competent in the prosecution of class action litigation and intend to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

205.    **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual Class members. Under the totality of the circumstances, a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The Defendants' conduct described in this Complaint stems from common and uniform practices, resulting in their unjust enrichment. The damages

sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by the Defendants' conduct.

206.    **Injunctive Relief Appropriate for the Defendants, Class. Fed. R. Civ. P. 23(b)(2).** Class certification is appropriate because Defendants have and continue to act on grounds generally applicable to the class, making appropriate injunctive relief with respect to Ms. McCarthy and the class members. Ms. McCarthy and the putative class seek an injunction prohibiting the Defendants from continued collection of these illegal loans, ordering the disgorgement of profits generated from collection of these illegal loans, and ordering the dissolution of each corporate Defendant that has been unjustly enriched from collection of these illegal loans.

207.    The loans issued by Arrow Mountain Funding to Plaintiff and the Class each charged an interest rate which rendered the loan void and unenforceable under applicable state law and were each issued without the requisite state license.

208.    Plaintiff and the Class conferred a benefit on Defendants when they made payments on their loans, as they had no obligation to do so and, therefore, Defendants were owed nothing.

209.    Defendants knew or should have known of the benefit, as evidenced by Defendants' attempt to avoid state usury laws through a guise of tribal affiliation and licensure.

210.    Accordingly, on behalf of themselves and all other consumers similarly situated, Plaintiff seeks to recover from Defendants, jointly and severally, all amounts paid on the Arrow Mountain Funding loans by Plaintiff and each class member.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court enter judgment on behalf of herself and the classes she seeks to represent against Defendants for:

a.    An Order certifying the proposed Classes under Fed. R. Civ. P. 23 (b)(3) and appointing Plaintiff as class representative and her counsel as class counsel, as soon as practicable;

b.    An Order declaring that Defendants are financially responsible for notifying class members of the pendency of this suit;

c.    An Order declaring that Defendants committed the violations of law alleged herein;

d.    An Order providing for any and all injunctive relief the Court deems appropriate;

e.    An Order awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount to be determined by the Court or jury;

f.      An Order awarding treble damages in accordance with proof and in an amount consistent with applicable precedent;

g.      An Order awarding interest at the maximum allowable legal rate on the foregoing sums;

h.      An Order awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees; and

i.      Such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Ms. McCarthy hereby demands a jury trial on all issues so triable.


Respectfully submitted on December 18, 2024, by:

                              **SERAPH LEGAL, P. A.**

                              /s/ *Bryan J. Geiger*
                              Bryan J. Geiger, Esq.
                              Florida Bar Number: 119168
                              BGeiger@seraphlegal.com
                              2124 W. Kennedy Blvd., Suite A.
                              Tampa, FL 33606
                              Tel: 813-567-1230 (Ext: 303)
                              Fax: 855-500-0705
                              *Counsel for Plaintiff*

## <u>ATTACHED EXHIBIT LIST</u>

A    Arrow Mountain Loan Agreement with Ms. McCarthy, October 14, 2022
B    Wage Assignment Demand Sent to Ms. McCarthy's Employer
C    Wage Assignment Demand Sent to Unrelated Consumer on January 4, 2016